Filed 9/30/24  In re A.W. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.W., et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. E.W. Defendant and Appellant. | E082592 (Super.Ct.No. SWJ2100258) OPINION |

APPEAL from the Superior Court of Riverside County.  Donal B. Donnelly, Judge.  (Retired judge of the Imperial Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Conditionally reversed and remanded with directions.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Samara Silverman, Deputy County Counsel, for Plaintiff and Respondent.

Appellant E.W. (Mother) appeals from the juvenile court's order appointing a guardian under Welfare and Institutions Code[1] section 366.26. Mother challenges the order on the ground that the Riverside County Department of Public Social Services (the Department) social workers and the juvenile court failed to comply with the duty of initial inquiry under the Indian Child Welfare Act[2] (ICWA). For the reasons set forth *post*, we conditionally reverse and remand this matter to the juvenile court.

## FACTUAL AND PROCEDURAL HISTORY[3]

Mother and R.W.[4] (Father; collectively, Parents) are the parents of Ar.W. (male born September 2008; Minor 1), Av.W. (female born January 2010; Minor 2), and Am.W. (female born January 2010; Minor 3,[5] collectively, Minors).[6]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3] Because the only issue on appeal is whether the Department and the juvenile court properly complied with their duties under ICWA, this court will focus on ICWA-related facts and procedural history.

[4] Father is not a party to this appeal.

[5] Minor 2 and Minor 3 are twins.

[6] On December 20, 2023, this court incorporated the record in case No. E082269 in the record of this case.

On April 7 and 16, 2021, the Department received referrals regarding two separate incidents of domestic violence between Parents. On June 7, 2021, the Department filed a petition under section 300, subdivision (b), on behalf of Minors. The petition alleged that Father perpetrated acts of domestic violence on Mother, Parents had histories of abusing controlled substances, Mother had been previously offered family reunification and maintenance services, and Mother had demonstrated limited ability to protect herself and Minors from harm.

The Judicial Council Indian Child Inquiry Attachment forms (ICWA-010(A)) that accompanied the petition indicated that the Department had been unable to make contact with Father regarding ICWA inquiry. In the forms, the social worker checked the box which stated, this inquiry "gave me reason to believe the child is or may be an Indian child." However, nothing else was filled out regarding ICWA status in the forms.

At the detention hearing on June 8, 2021, Mother appeared telephonically. Father did not appear. Mother denied Native American ancestry. The court asked Mother, "Mom, does the dad have any Native American ancestry?" Mother replied, "No." With regard to the ICWA-010(A) forms indicating Minors may be Indian children, the Department's counsel stated that was likely an error because Father had not been interviewed regarding ICWA. The court then found that the Department conducted a sufficient inquiry regarding Indian ancestry and ICWA did not apply.

The juvenile court found prima facie evidence of allegations in the petition and detained Minors from Father, who was found to be the presumed father, under

3

section 319, subdivision (b)(1). Minors were not detained from Mother with specified conditions. The court then recalled and quashed previously issued protective custody warrants for Minors.

On June 8, 2021, Mother's counsel filed a Judicial Council Parental Notification of Indian Status form (ICWA-020) on behalf of Mother. In the form, the box, "None of the above apply," was checked.

In an addendum report filed on August 2, 2021, the social worker noted that on July 25, 2021, Mother sent numerous texts. One of the texts stated that she was "challenging the detention report because there is a lot of false information in it, like my children are Indian." However, Mother had previously told the social worker on May 6, 2021, and June 17, 2021, that she had no Native American ancestry.

At the contested jurisdiction and disposition hearing on August 2, 2021, the juvenile court found the allegations in the petition were true and adjudged Minors dependents of the court. A declaration of due diligence was filed as to Father; he had not been found. The court denied Father reunification services under section 361.5, subdivision (b)(1), since his whereabouts were unknown. Mother retained physical custody of Minors with family maintenance services. When the juvenile court asked Mother if she had any Native American ancestry, she responded, "No." When asked if Father had any, Mother responded, "Not that I know of." The court found that the Department had conducted a sufficient inquiry regarding Indian ancestry and found that ICWA did not apply.

On January 31, 2022, at a section 364 family maintenance review hearing, the juvenile court ordered Mother to complete a hair follicle drug test. Mother completed the hair follicle test on February 11, 2022. On March 1, 2022, the Department received the results which showed Mother tested positive for amphetamine and methamphetamine.

At the contested section 364 review hearing on March 2, 2022, Mother was not present. The Department requested that the juvenile court issue protective custody warrants under section 340 to detain Minors from Mother. The juvenile court ordered the social worker to notify Mother and Minors to appear at the court later that day at 1:30 p.m. Otherwise, the warrants would be issued.

At the 1:30 p.m. hearing, Mother appeared with Minors. The Department again requested that the court issue the section 340 protective custody warrants. When the court asked, "[e]ffectively what you are asking for now is you want me to do a removal today? [¶] . . . [¶] . . . And then set the matter for a detention hearing?" County counsel answered in the affirmative.

Thereafter, the juvenile court made the following findings: Minors came within section 300, subdivision (b), continuance in the home of Mother is contrary to Minors' welfare, there was a substantial danger to the physical health of Minors and/or Minors were suffering severe emotional damage, and there were no reasonable means by which Minors' physical and/or emotional health could be protected without removing them from the parents'/guardian's physical custody under section 319, subdivision (b)(1). The court then detained Minors. The court stated: "So at this point in time I am ordering the

children removed from the mother's care and making removal findings and setting the matter for a detention hearing." The court then ordered Mother to take another saliva and urine test on the same day, and "set the matter for a detention hearing so that the mother can further contest the removal." After further discussion between the juvenile court, Mother, and the attorneys, the court stated: "The children are detained, and temporary placement and care is vested with DPSS pending the hearing under WIC 355 or further order of the Court." The court did not remove Minors under section 340.

Two days later, on March 4, 2022, the Department filed a section 387 petition. The petition alleged that the previous disposition was not effective in protecting Minors because Mother failed to benefit from services and continued to violate court orders by testing positive for methamphetamine.

On March 7, 2022, a detention hearing for the section 387 petition was held. The juvenile court found that ICWA did not apply. The court then found that a prima facie showing had been made and ordered Minors detained from Mother. The court also ordered an Interstate Compact on the Placement of Children (ICPC) with the state of Oklahoma for an adult sister.

On May 25, 2022, at the contested jurisdiction and disposition hearing on the section 387 petition, the juvenile court removed physical custody of Minors from Mother under section 361, subdivision (c)(1), and ordered family reunification services. The court found that the Department conducted a sufficient ICWA inquiry and that ICWA did not apply, and Minors were not Indian children.

6

On June 8, 2022, Minors were placed with their maternal grandmother (MGM). A maternal uncle, Mother's half brother, also resided in MGM's home. The maternal uncle was in court on three occasions throughout the case. Moreover, pursuant to the ICPC order, the social worker spoke with N., Minors' maternal half sister.

On December 20, 2022, Mother denied Native American ancestry. On September 17, 2022, MGM stated there was no Native American ancestry to her knowledge. On April 21, 2023, MGM again denied Native American ancestry.

On February 2, 2023, at a section 366.21, subdivision (e) review hearing, the juvenile court continued Mother's reunification services.

On May 8, 2023, at the 12-month review hearing, the juvenile court ordered another hair follicle test for Mother. Mother refused the Department's referral. Mother insisted on picking her own lab because she did not trust labs contracted with the Department. Mother sent an email of a screen shot to her social worker; it showed that Mother had completed her follicle test with Quest Diagnostics and the result was negative.

When the social worker called the phone number for Quest Diagnostics on the screen shot, the lab reported that the test result was invalid. Quest Diagnostics did not collect a hair specimen from Mother on the date indicated; the specimen identification number on the document did not match Mother's name.

On September 28, 2023, at the contested 12-month section 366.21, subdivision (f) review hearing, the juvenile court terminated Mother's reunification services. The court again found that ICWA did not apply, and Minors were not Indian children.

On October 5, 2023, Mother filed a 10-page written declaration with attachments. On November 3, 2023, Mother filed an "Objections and Corrections to the Report of the Social Worker [Dated 4/5/2023]" with attachments. (All caps omitted.)

On November 9, 2023, Mother filed an "Objection/Correction to [the] Social Worker's . . . Report . . . [Dated 11/09/2023.]" (All caps omitted.) In this objection, Mother stated: "MOTHER has always denied any Native American Ancestry for herself, however MOTHER never denied Native [American] Ancestry for FATHER, [R.W.]. MOTHER has no knowledge to deny ancestry for Father. This is false and untrue. This only proves that the Department has never contacted Father, and the Department cannot say if Father ever received proper notice of any court hearings throughout this entire process. MOTHER has never spoken or had contact with 'SSP Mora' who inquired about Native American Ancestry with maternal grandmother, who has no knowledge of Father's ancestry and has full knowledge that her mother claims to have Cherokee Indian Ancestry from Maternal grandmothers, grandmother. My grandmother can provide more information about this. That is maternal grandmother's mother, the children's great-grandmother, [J.P.]."

On November 9, 2023, at the section 366.26 hearing, the juvenile court granted MGM legal guardianship.

On November 13, 2023, Mother filed a timely notice of appeal.

## DISCUSSION

Mother's sole contention on appeal is that "[t]he juvenile court erred when it found the Indian Child Welfare Act does not apply because neither the Department nor the juvenile court asked readily-available [*sic*] extended family members if there was Native American ancestry." Mother asserts error only as to maternal family members, specifically, MGM, maternal uncle, and maternal half sibling, N.

"ICWA establishes minimum national standards 'for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' (25 U.S.C. § 1902.) Under California law, the juvenile court and county child welfare department have 'an affirmative and continuing duty to inquire' whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2005) 55 Cal.App.5th 558, 566.) 'This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.' (*D.F.*, at p. 566.)" (*In re Samantha F.* (2024) 99 Cal.App.5th 1062, 1066 (*Samantha F.*).)

When a child is taken into temporary custody under section 306, the Department has a duty to ask the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents,

9

grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Section 306 permits a social worker to take a child into temporary custody "without a warrant" in emergency situations, namely, when "the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (§ 306, subd. (a)(2).) Section 340 also provides for the issuance of protective custody warrants. (§ 340, subd. (b).)

California Courts of Appeal, including members of this court, are deeply split on whether ICWA's duty to inquire extended family members about a child's Indian ancestry under section 224.2, subdivision (b), is triggered when the child is taken into custody under section 340. (See generally *Samantha F.*, *supra*, 99 Cal.App.5th at pp. 1066-1086.)

In this case, the Department argues that "the inquiry obligation under section 224.2, subdivision (b), was never triggered, and the Department was not statutorily required to conduct an ICWA inquiry of extended family members, as the children were never in temporary custody under section 306." In support, the Department contends that "even though the section 340 warrants were not signed, this was a detention which had been ordered by the Trial Court and the children were not placed into temporary custody [of the Department]." We reject the Department's argument.

Under section 306, "[a]ny social worker in a county welfare department . . . may do all of the following: [¶] . . . [¶] (2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 . . . and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety." (§ 306, subd. (a)(2).) Then, "[u]pon receiving temporary custody of a child, the county welfare department shall inquire pursuant to Section 224.2, whether the child is an Indian child." (§ 306, subd. (b).)

Here, as provided *ante*, at the March 2, 2022 contested section 364 hearing, the juvenile court clearly stated: "The children are detained, and *temporary placement and care is vested with DPSS* pending the hearing under WIC 355 or further order of the Court." (Italics added.) Prior to detaining Minors, the court noted: "And the information that was provided to the Court today indicates a lack of confidence in the Department as to where the mother is living with the children, that the mother is basically threatening to move to Oklahoma with the children. And perhaps the most concerning part, which is that the mother tested positive for methamphetamine via hair follicle. She was ordered to take the hair follicle because of some missed UA tests. [¶] And so the long and the short of it is since the initiation of this case and what would appear, given sort of the way the hair follicle works, is that in the time that the kids have been in the mother's care and that she has been driving them back and forth allegedly from L.A. county to their school in

11

Menifee, she has been using methamphetamine. So that's extremely concerning to the Court given all of the issues in this case." After further discussion between the juvenile court and the present parties, the court stated: "All right. In the meantime, I'm detaining from the mother. To that end, I'm just making the standard removal orders and findings. At this time, I do find that the children fall within Welfare and Institutions Code Section 300 (b)."[7]

Based on the above, we find the Department's argument that "the children were never in temporary custody pursuant to section 306," to be without merit (caps omitted). Accordingly, we need not consider the cases determining whether ICWA's duty of inquiry applies to cases where the children are removed pursuant to a protective custody warrant issued under section 340, and not under section 306. (*In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572; & *In re Delila D.* (2023) 93 Cal.App.5th 953, 962, review granted Sept. 27, 2023, S281447.)

Here, because Minors were not removed pursuant to section 340 and ordered detained and placed in the temporary care of the Department, the Department and the juvenile court had a duty to inquire of Minors' extended family members about their potential Indian ancestry. As Mother points out and the Department agrees, "the record

[7] "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶]
"(b)
"(1) The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness . . . ." (§ 300, subd. (b)(1).)

12

does not reflect an ICWA inquiry of maternal uncle and maternal half-sibling [*sic*]." The maternal uncle and maternal half sibling were readily available, and there is nothing in the record to indicate that the Department could not have contacted them to ask about Minors' Indian heritage on their maternal side. The maternal uncle attended numerous hearings, and the Department had telephonic contact with the aunt. The Department thus did not satisfy its duty of initial inquiry, and, in turn, the juvenile court erroneously found that ICWA did not apply. (§ 224.2, subd. (b); *In re Y.M.* (2022) 82 Cal.App.5th 901, 916; *In re Oscar H.* (2022) 84 Cal.App.5th 933, 937; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 680.)

In *In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*), California's Supreme Court recently made its determination on the issue of "whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error." The court held "that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation." (*Id*. at p. 1125.)

Therefore, this case must be conditionally reversed and remanded to the juvenile court for the Department to conduct an adequate ICWA inquiry.

13

**DISPOSITION**

The order granting the appointment of guardian for Minors is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the initial inquiry provisions of ICWA and of sections 224.2 and 224.3, and the documentation provisions of the California Rules of Court, rule 5.481(a)(5), consistent with this opinion. If the juvenile court thereafter finds a proper and adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then the court shall reinstate the order appointing the guardian for Minors. If the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. § 1912, subd. (a); §§ 224.2, subd. (i)(1), 224.3, 224.4.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>McKINSTER</u>
Acting P. J.

We concur:

<u>CODRINGTON</u>
J.

<u>FIELDS</u>
J.

14